**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE ESCOBAR,<br>    Plaintiff, | ) |
| | ) |
| | )   Case No. |
| v. | ) |
| | )   JURY DEMANDED |
| CIRCLE LOGISTICS INC., | ) |
|    Defendant. | ) |

## <u>COMPLAINT</u>

Plaintiff, STEPHANIE ESCOBAR ("Plaintiff"), by and through her attorneys, and for her Complaint against Defendant CIRCLE LOGISTICS INC. ("Defendant"), states as follows:

### Nature Of the Action

1.     This is an action brought to redress Defendant's employment discrimination against Plaintiff because on her female sex and in retaliation for her protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") (Counts I and III); Defendant's employment discrimination against Plaintiff because of her age and in retaliation for her protected activity in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.,* ("ADEA") (Counts II and IV), and to recover unpaid overtime premiums owed to Plaintiff by Defendant pursuant to the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.*, ("FLSA") (Count V) and the Illinois Minimum Wage Law, 820 ILCS 105, *et seq.* ("IMWL") (Count VI).

### Jurisdiction And Venue

1

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal law, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same common nucleus of operative facts as Plaintiff's federal claims.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to these claims occurred in this district.

**Parties**

4.     At all times material to this Complaint, Plaintiff was over the age of 40 and Plaintiff was born in 1977.

5.     At all times material to this Complaint, Plaintiff's sex and gender was female.

6.     At all times material to this Complaint, Defendant had knowledge of Plaintiff's age and gender.

7.     At all times material to this Complaint, Plaintiff was a citizen of the State of Illinois.

8.     At all times material to this Complaint, Defendant was and is a corporation organized under the laws of Indiana and registered to do business in Illinois, with an office located at 1200 N North Branch St, Chicago, IL 60642 ("Chicago Office") that employed in excess of 20 employees.

9.     At all times material to this Complaint, Defendant operated as a third-party logistics provider and freight brokerage company operating under the authority provided by the United States Department of Transportation. Defendant's business

2

consists of facilitating freight transportation by connecting businesses that need to ship goods with transportation carriers and providing logistics support services for these shipments.

10. At all times material to this Complaint, Defendant provided freight brokerage and logistics services throughout Illinois and nationwide, serving as an intermediary between shipping customers and transportation carriers.

## Exhaustion of Administrative Remedies

11. On or about March 17, 2023, Plaintiff filed a *pro se* Charge of Employment Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant alleging hostile work environment and disparate treatment, including termination because of her female sex, age over 40 and in retaliation for her protected Title VII and ADEA activity, EEOC Charge #440-2023-00802.

12. On November 21, 2024, the EEOC issued Plaintiff a Notice of Right to Sue on EEOC Charge #440-2023-00802.

13. This action is timely filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

## Factual Allegations

14. Defendant maintained an entirely male leadership team during Plaintiff's employment. A majority of Defendant employees were also male, while administrative work was performed by female employees.

15. Defendant employed Plaintiff as an Account Manager out of the Chicago Office from on or about March 28, 2022, to on or about October 28, 2022.

16. Defendant regularly advertises a company motto "work hard, play hard" which emphasizes it encourages and environment where employees do just that "work hard" and "play hard."

17. To that end, Defendant fostered and encouraged a "frat-house" environment in Plaintiff's department which was staffed with a majority of much younger male account managers and which included regular alcohol consumption during weekly "Game Ball Call" video sales conferences from the office refrigerator stocked by a beer distributor client.

18. While beer was regularly stocked, employees with other alcohol preferences were encouraged to bring in their preferred beverage from a nearby liquor store. It was understood and encouraged that alcoholic beverages would be consumed during weekly sales meetings and other times. Employees were pressured to partake in the festivities. However, Defendant maintained a policy that the alcohol be hidden so as to not appear on screen during zoom meetings because they would be recorded. Managers would abruptly shut off cameras to avoid recording employee alcohol use.

19. Defendant maintained an open-air office environment. Despite this, Plaintiff's substantially younger male colleagues regularly made explicit comments loudly across the room subjecting her to an unwanted and pervasive use of sexually explicit references and inappropriate sexual comments she was unable to avoid while performing her work.

4

20.     Plaintiff's younger male colleagues regularly made sexually explicit remarks and demonstrations. One such occasion was comparing cream-filled donuts to their own or other's body parts using various euphemisms for penises, the "c*m" they disperse, the size, shape, and characteristics, as compared to the donuts etc.

21.     Plaintiff was repeatedly forced to wear headphones to drown out some of the more explicit "frat-house" conversations centering around alcohol and sex, simply endure the conversations, or remove herself altogether lest she confirm her "mature" status and further alienate her male supervisors and younger male colleagues by not fitting in.

22.     Defendant and the third party logistics field is a male dominated industry, however Plaintiff came to her position with a sales background and understood how to aggressively maintain customer accounts. Nevertheless, Plaintiff received less training, coaching, and support than her younger male colleagues, particularly from one male supervisor Alex Churchman.

23.     Churchman regularly provided one-on-one training opportunities to new male employees who were substantially younger than Plaintiff, all while specifically excluding Plaintiff.  Churchman went out of his way to punish and exclude Plaintiff, including publicly demonstrating preferential treatment to other employees. In one instance, Churchman walked around the office loudly asking each employee for their coffee orders so he could buy them drinks, deliberately excluding Plaintiff to send a message that she was not part of the team.

24. Plaintiff was criticized for being too "mature" or otherwise maligned and ostracized by her younger male colleagues and male supervisors when she refused to participate in or otherwise expressed disapproval of the office "frat house" culture.

25. These criticisms were explicit in an October 14, 2022, email discussing Plaintiff's complaints, when supervisor Michael Murphy wrote that he saw Plaintiff's concerns as "a bit of a concern that a more mature person was having difficulty working here."

26. When Plaintiff complained about the inappropriate behavior, she was subjected to retaliation of having accounts taken away and eventually termination.

27. Supervisors showed their favor to younger male colleagues who "fit in" by transferring Plaintiff's accounts to a newer and younger male subordinate, reducing her ability to make commissions on those accounts.

28. Supervisors specifically and deliberately excluded Plaintiff from office activities, including ensuring public demonstrations of preferential treatment to her younger male colleagues.

29. Plaintiff made multiple complaints to management about the unequal treatment and hostile work environment throughout her employment. On September 28, 2022, Plaintiff sent an email to HR stating to the effect "All I have ever wanted was to know how to do my job without it changing from one day to the next, literally. I have worked with men my entire life and have never had difficulty or felt a lack of respect even. I know I am doing a man's job but I do not need to be put down or spoken to differently because of it."

30. Following Plaintiff's complaints, she was placed on a Performance Improvement Plan that ended in September 2022.

31. Defendant terminated Plaintiff's employment on or about October 28, 2022, approximately one month after her PIP ended.

32. . This termination came just days after Plaintiff was noted to have had her "best week" during a week when a support colleague was out of the office.

33. Defendant's justification for terminating Plaintiff was pretextual.

34. Plaintiff's younger male colleagues who had not engaged in protected complaints but who were otherwise similarly situated to Plaintiff were treated more favorably and were not terminated.

35. This Complaint was drafted by counsel and is not intended to be construed as a verbatim statement of Plaintiff. To the extent permissible by the Federal Rules of Civil Procedure, Plaintiff pleads the Counts herein in the alternative. Plaintiff seeks remedy for her damages as recognized and warranted under the law and facts.

**Common Overtime Allegations**

36. At all relevant times in her work for Defendant in the Account Manager position, Plaintiff performed straightforward inside sales tasks.

37. At all times material to this Complaint, Plaintiff's primary job duty was cold-calling current and potential customers and selling Defendant' services to them and being a point of contact for issues during contracted freight loads. Plaintiff called

and emailed current and potential customers to obtain the customer's agreement to ship their freight using Defendant' services.

38. At all times material to this Complaint, Defendant misclassified Plaintiff as "exempt" from overtime under the FLSA and IMWL.

39. Defendant operated pursuant to their policy and practice of not paying Plaintiff one and one-half times her regular rate of pay for all time spent working in excess of 40 hours per workweek.

40. In addition to her regular office hours at Defendant's Chicago location at 1200 N North Branch St, Chicago, IL 60642, Plaintiff regularly performed work tasks outside of normal business hours, including:

a. Communicating with Defendant staff through the Microsoft Teams platform;
b. Checking and responding to work emails;
c. Checking and responding to work voicemails;
d. Answering and returning phone calls from drivers, customers, and other Defendant staff;
e. Making phone calls to coordinate shipments;
f. Sending emails to drivers, customers, and other Defendant staff;
g. Discussing issues regarding contracted loads with drivers, shippers, receivers, and other Defendant staff; and
h. Entering and updating load information in Defendant's systems.

41. Defendant required Plaintiff to be regularly available outside of normal business hours to perform these tasks. Plaintiff was required to be available on her personal phone and personal computer to handle work matters during evenings and weekends.

42. This work outside of normal business hours was performed with the knowledge and approval of Defendant, who expected and required such availability from Plaintiff as part of her job duties.

43. Defendant failed to maintain accurate time records of Plaintiff's work hours. Throughout her employment in 2022, Plaintiff regularly worked overtime hours in numerous workweeks without receiving overtime compensation.

44. Plaintiff estimates the following overtime hours in excess of 40 hours per week for Defendant during the following workweeks in 2022: Week 21 (2 hours), Week 22 (2 hours), Week 23 (3 hours), Week 24 (4 hours), Week 25 (4 hours), Week 27 (4 hours), Week 28 (5 hours), Week 29 (4 hours), Week 30 (5 hours), Week 31 (4 hours), Week 32 (5 hours), Week 33 (4 hours), Week 34 (4 hours), Week 35 (4 hours), Week 36 (6 hours), Week 37 (6 hours), Week 38 (6 hours), Week 39 (6 hours), Week 40 (6 hours), Week 41 (6 hours), Week 42 (6 hours), and Week 43 (2 hours). In total, Plaintiff estimates she worked approximately one hundred and two (102) hours of overtime during these workweeks for which she was not compensated at one-and-one-half times her regular rate of pay.

45. In her work for Defendant, Plaintiff's primary duty was not managing the enterprise or a customarily recognized department or subdivision of Defendant.

46. In her work for Defendant, Plaintiff did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.

47. In her work for Defendant, Plaintiff did not have the authority to hire or fire other employees, nor were her suggestions or recommendations as to hiring,

9

firing, advancement, promotion, or any other change in status of other employees given particular weight.

48. In her work for Defendant, Plaintiff's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of Defendant or Defendant' customers.

49. The primary duties of Plaintiff during her employment as an Account Manager with Defendant did not include the exercise of discretion and independent judgment in matters of significance to the operations of Defendant, as evidenced by:

a. Plaintiff's duties primarily involved straightforward inside sales tasks, including cold-calling and emailing current and potential customers;
b. Plaintiff's work was limited to securing customers' agreement to ship their freight using Defendant' services according to set policies and procedures;
c. Plaintiff did not have authority to negotiate or set rates outside of established parameters and at no point held her own independent USDOT brokerage authority;
d. Plaintiff did not have authority to bind the company in matters of significance;
e. Plaintiff did not formulate, affect, interpret, or implement management policies or operating practices;
f. Plaintiff did not carry out major assignments in conducting the operations of Defendant's business;
g. Plaintiff did not perform work that affects business operations to a substantial degree;
h. Plaintiff was required to follow established company procedures and guidelines in performing her duties;
i. Plaintiff worked under the direction, control, supervision and management of her supervisors in performing her duties;
j. Plaintiff was required to strictly adhere to Defendant's established policies, procedures, and practices in discharging her tasks;
k. Plaintiff's work was closely supervised and monitored to ensure compliance with Defendant's established procedures; and
l. Plaintiff lacked authority to deviate from or make exceptions to Defendant's established policies and procedures without supervisor approval, such as booking loads with motor-carriers black-listed by

Defendant or independently filing FreightGuard reports with motor carriers.

**COUNT I**
**Discrimination Based on Sex in Violation of Title VII of the Civil Rights**
**Act of 1964,**
**42 U.S.C. § 2000e, *et seq.***
**Plaintiff v. Defendant**

50.   Plaintiff realleges and incorporates by reference paragraphs 1-35 of this Complaint as if fully set forth herein this Paragraph of Count I of this Complaint.

51.   At all times material to this Complaint, Title VII prohibited employers from discriminating against employees in the terms and conditions of employment on the basis of sex. 42 U.S.C. § 2000e-2(a)(1).

52.   At all times material to this Complaint, Defendant was an "employer" of Plaintiff within the meaning of Title VII. 42 U.S.C. § 2000e(b).

53.   At all times material to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of Title VII. 42 U.S.C. § 2000e(f).

54.   Defendant maintained an entirely male leadership team during Plaintiff's employment. A majority of Defendant's employees were also male, while administrative work was performed by female employees.

55.   Defendant discriminated against Plaintiff on the basis of her sex (female) by creating and maintaining a hostile work environment and taking adverse employment actions against her, including but not limited to:

   a. Fostering and encouraging a "frat-house" environment that subjected Plaintiff to pervasive and unwanted sexually explicit references and inappropriate sexual comments she was unable to avoid while performing her work;

11

b. Subjecting Plaintiff to explicit sexual comments and demonstrations, including comparing cream-filled donuts to male body parts using euphemisms for penises and sexual acts;

c. *De Facto* forcing Plaintiff to either wear headphones to drown out sexually explicit conversations or remove herself from her workspace to avoid the hostile environment;

d. Providing less training, coaching and support to Plaintiff than her male colleagues, particularly by supervisor Alex Churchman;

e. Deliberately excluding Plaintiff from one-on-one training opportunities that were provided to male employees;

f. Publicly demonstrating preferential treatment to male employees while deliberately excluding Plaintiff to send a message that she was not part of the team;

g. Transferring Plaintiff's accounts to newer and younger male colleagues, thereby reducing or eliminating her ability to make commissions on those accounts;

h. Following Plaintiff's complaints about discrimination and the hostile work environment, placing Plaintiff on a Performance Improvement Plan that ended in September 2022, while male colleagues who had not engaged in protected complaints were not subjected to similar disciplinary measures;

i. Terminating Plaintiff's employment on October 28, 2022, approximately one month after her PIP ended and just days after specifically noting she had her "best week" during a period when a support colleague was out of the office; and

j. Providing pretextual justification for terminating Plaintiff while younger male colleagues who had not engaged in protected complaints but who were otherwise similarly situated to Plaintiff were treated more favorably and were not terminated.

56. Similarly situated male employees were not subjected to the same level of scrutiny, negative treatment, or sudden termination that Plaintiff experienced.

57. When Plaintiff came forward to Defendant with her complaints about discrimination and the hostile work environment, she was ignored, dismissed, or subjected to increased hostility culminating in her termination.

58. Plaintiff's work environment during her employment with Defendant was objectively offensive to a reasonable employee and Plaintiff was offended.

59. Defendant's sex based harassment of Plaintiff was severe and pervasive enough to alter the conditions of Plaintiff's employment and create an actionable hostile working environment.

60. Defendant knew of the sex based harassment through Plaintiff's multiple reports and complaints and failed to take prompt remedial action to stop and correct the same.

61. Defendant's conduct in subjecting Plaintiff to a hostile work environment and taking adverse employment actions against her because of her female sex, including transferring her accounts to reduce her commissions, placing her on a Performance Improvement Plan, and terminating her employment, constituted unlawful sex based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

62. Defendant's conduct was intentional, deliberate, willful and conducted with disregard of the rights of the Plaintiff.

63. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, anxiety, and damage to her professional reputation.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Award Plaintiff back pay, front pay, and lost benefits;

13

B. Award Plaintiff compensatory damages to make her whole;

C. Award Plaintiff punitive damages;

D. Award Plaintiff reasonable attorneys' fees and costs; and

E. Grant such other relief as this Court deems just and proper.

**COUNT II**
**Discrimination Based on Age in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.***
**Plaintiff v. Defendant**

64. Plaintiff realleges and incorporates by reference paragraphs 1-35 of this Complaint as if fully set forth herein this Paragraph of Count II of this Complaint.

65. At all times material to this Complaint, the ADEA prohibited employers from discriminating against employees in the terms and conditions of employment on the basis of age. 29 U.S.C. § 623(a).

66. At all times material to this Complaint, Defendant was an "employer" of Plaintiff within the meaning of the ADEA. 29 U.S.C. § 630(b).

67. At all times material to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of the ADEA. 29 U.S.C. § 630(f).

68. At all times material to this Complaint, Plaintiff was over the age of 40 and was born in 1977 and was a member of a protected class under the ADEA. 29 U.S.C. § 631(a).

69. At all times material to this Complaint, Defendant had knowledge of Plaintiff's membership in an ADEA protected class.

14

70.     Defendant discriminated against Plaintiff on the basis of her age by creating and maintaining a hostile work environment and taking adverse employment actions against her, including but not limited to:

   a. Fostering and encouraging a "frat-house" environment staffed with a majority of much younger male account managers;
   b. Criticizing Plaintiff for being too "mature" when she refused to participate in or expressed disapproval of the office "frat house" culture;
   c. Maligning and ostracizing Plaintiff when she would not participate in activities favored by her younger colleagues;
   d. Providing less training, coaching and support to Plaintiff than her younger colleagues, particularly from supervisor Alex Churchman;
   e. Deliberately excluding Plaintiff from one-on-one training opportunities that were provided to younger employees;
   f. Publicly demonstrating preferential treatment to younger employees while deliberately excluding Plaintiff to send a message that she was not part of the team;
   g. Transferring Plaintiff's accounts to newer and younger colleagues, thereby reducing or eliminating her ability to make commissions on those accounts;
   h. Following Plaintiff's complaints about age discrimination and the hostile work environment, placing Plaintiff on a Performance Improvement Plan that ended in September 2022, while younger colleagues who had not engaged in protected complaints were not subjected to similar disciplinary measures;
   i. Terminating Plaintiff's employment on October 28, 2022, approximately one month after her PIP ended and just days after specifically noting she had her "best week" during a period when a support colleague was out of the office; and
   j. Providing pretextual justification for terminating Plaintiff while younger colleagues who had not engaged in protected complaints but who were otherwise similarly situated to Plaintiff were treated more favorably and were not terminated.

71.     Similarly situated younger employees were not subjected to the same level of scrutiny, negative treatment, or sudden termination that Plaintiff experienced.

15

72. When Plaintiff came forward to Defendant with her complaints about age discrimination and the hostile work environment, she was ignored, dismissed, or subjected to increased hostility culminating in her termination.

73. Plaintiff's work environment during her employment with Defendant was objectively offensive to a reasonable employee and Plaintiff was offended.

74. As evidenced by supervisor Michael Murphy's October 14, 2022 email stating he saw Plaintiff's concerns as "a bit of a concern that a more mature person was having difficulty working here," Defendant's age-based harassment of Plaintiff was severe and pervasive enough to alter the conditions of Plaintiff's employment and create an actionable hostile working environment.

75. Defendant knew of the age-based harassment through Plaintiff's multiple reports and complaints and failed to take prompt remedial action to stop and correct the same.

76. Defendant's conduct in subjecting Plaintiff to a hostile work environment and taking adverse employment actions against her because of her age over 40, including transferring her accounts to reduce her commissions, placing her on a Performance Improvement Plan, and terminating her employment, constituted unlawful age discrimination in violation of the ADEA, 29 U.S.C. § 623(a).

77. Defendant's conduct was intentional, deliberate, willful and conducted with disregard of the rights of the Plaintiff.

78. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including but not limited to

lost wages and benefits, emotional distress, humiliation, anxiety, and damage to her professional reputation.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Award Plaintiff back pay, front pay, and lost benefits;

B. Award Plaintiff liquidated damages in an equal amount to back pay, front pay and lost benefits;

D. Award Plaintiff reasonable attorneys' fees and costs; and

E. Grant such other relief as this Court deems just and proper.

## COUNT III
## Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)
## Plaintiff v. Defendant

79.     Plaintiff realleges and incorporates by reference paragraphs 1-35 of this Complaint as if fully set forth herein this Paragraph of Count III of this Complaint.

80.     At all times material to this Complaint, Defendant employed 15 or more employees.

81.     At all times material to this Complaint, Defendant was an employer of Plaintiff within the meaning of Title VII, 42 U.S.C. § 2000e(b).

82.     At all times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f).

83.     At all times material to this Complaint, Title VII prohibited employers from retaliating against employees for engaging in the protected activity of opposing any practice unlawful under Title VII, including discrimination and harassment. 42 U.S.C. § 2000e-3(a).

17

84. Plaintiff engaged in protected activity under Title VII when she: a. Made multiple complaints to management about the unequal treatment and hostile work environment throughout her employment; b. Complained to HR on September 28, 2022, stating "All I have ever wanted was to know how to do my job without it changing from one day to the next, literally. I have worked with men my entire life and have never had difficulty or felt a lack of respect even. I know I am doing a man's job but I do not need to be put down or spoken to differently because of it"; c. Opposed and complained about the "frat-house" environment that subjected her to pervasive and unwanted sexually explicit references; d. Complained about being criticized for being too "mature" when she refused to participate in or expressed disapproval of the office "frat house" culture; e. Opposed discriminatory treatment and harassment based on her sex and age.

85. Defendant had actual and constructive knowledge of Plaintiff's protected activity through her multiple complaints to management and HR.

86. Defendant retaliated against Plaintiff because of her protected activity by: a. Subjecting her to increased scrutiny and criticism; b. Transferring her accounts to newer and younger male subordinates, reducing her ability to make commissions; c. Deliberately excluding her from office activities and opportunities; d. Placing her on a Performance Improvement Plan in September 2022; e. Terminating her employment on October 28, 2022, approximately one month after her PIP ended and just days after she was noted to have had her "best week."

87. The temporal proximity between Plaintiff's protected complaints and the adverse employment actions, particularly her termination, evidences the causal connection between her protected activity and Defendant's retaliation.

88. Defendant did not subject employees who had not engaged in protected activity to similar adverse actions.

89. Defendant's stated reasons for the adverse employment actions, including Plaintiff's termination, were pretextual and designed to cover up their retaliatory motives.

90. Defendant's retaliatory actions were intentional, deliberate, willful, and conducted with disregard of Plaintiff's rights under Title VII.

91. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered significant damages including loss of employment, income, benefits, emotional distress, mental anguish, damage to reputation, and has incurred attorneys' fees and costs in this action.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Award Plaintiff back pay, front pay, and lost benefits;

B. Award Plaintiff compensatory damages to make her whole;

D. Award Plaintiff punitive damages;

D. Award Plaintiff reasonable attorneys' fees and costs;

E. Award Plaintiff pre-judgment and post-judgment interest at the highest rate permitted by law; and

G. Grant such other relief as this Court deems just and proper.

## COUNT IV
### Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*
### Plaintiff v. Defendant

92. Plaintiff realleges and incorporates by reference paragraphs 1-35 of this Complaint as if fully set forth herein this Paragraph of Count IV of this Complaint.

93. At all times material to this Complaint, Defendant employed 20 or more employees.

94. At all times material to this Complaint, Defendant was an employer within the meaning of the ADEA, 29 U.S.C. § 630(b).

95. At all times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of the ADEA, 29 U.S.C. § 630(f).

96. At all times material to this Complaint, Plaintiff was over the age of 40 and was born in 1977, placing her within the class of persons protected by the ADEA.

97. At all times material to this Complaint, the ADEA prohibited employers from retaliating against employees for opposing any practice made unlawful by the ADEA. 29 U.S.C. § 623(d).

98. Plaintiff engaged in protected activity under the ADEA when she: a. Complained about being criticized and ostracized for being too "mature" when she refused to participate in or expressed disapproval of the office "frat house" culture; b. Opposed and complained about supervisor Michael Murphy's October 14, 2022 comment expressing "a bit of a concern that a more mature person was having difficulty working here"; c. Made multiple complaints to management about age-based discrimination and harassment throughout her employment; d. Opposed the

20

disparate treatment between herself and younger employees regarding training, support, and workplace inclusion.

99. Defendant had actual and constructive knowledge of Plaintiff's protected activity through her multiple complaints to management.

100. Defendant retaliated against Plaintiff because of her protected activity by: a. Subjecting her to increased scrutiny and criticism; b. Transferring her accounts to newer and younger subordinates, reducing her ability to make commissions; c. Deliberately excluding her from office activities and opportunities; d. Placing her on a Performance Improvement Plan in September 2022; e. Terminating her employment on October 28, 2022, approximately one month after her PIP ended and just days after she was noted to have had her "best week."

101. The temporal proximity between Plaintiff's protected complaints and the adverse employment actions, particularly her termination shortly after opposing age-based comments and discrimination, evidences the causal connection between her protected activity and Defendant's retaliation.

102. Defendant did not subject younger employees who had not engaged in protected activity to similar adverse actions.

103. Defendant's stated reasons for the adverse employment actions, including Plaintiff's termination, were pretextual and designed to cover up their retaliatory motives.

104. Defendant's retaliatory actions were intentional, deliberate, willful, and conducted with reckless disregard of Plaintiff's rights under the ADEA.

105. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered significant damages including loss of employment, income, benefits, emotional distress, mental anguish, damage to reputation, and has incurred attorneys' fees and costs in this action.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Award Plaintiff back pay, front pay, and lost benefits;

B. Award Plaintiff liquidated damages;

C. Award Plaintiff reasonable attorneys' fees and costs;

D. Award Plaintiff pre-judgment and post-judgment interest at the highest rate permitted by law; and

E. Grant such other relief as this Court deems just and proper.

## COUNT V
### Willful Violation of the Fair Labor Standards Act - Unpaid Overtime
### Plaintiff v. Defendant

107. Plaintiff realleges and incorporates by reference paragraphs 1-49(a)-(l) of this Complaint as if fully set forth herein this Paragraph of Count V of this Complaint.

108. At all times material to this Complaint, Defendant employed 15 or more employees.

109. At all times material to this Complaint, Defendant was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

110. At all times material to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e).

22

111.    Under the FLSA, 29 U.S.C. § 207(a)(1), Defendant was required to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek.

112.    Under the FLSA, 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2, Defendant was required to maintain accurate records of the hours worked by Plaintiff, including: a. Time of day and day of week when workweek begins; b. Regular hourly rate of pay; c. Hours worked each workday and total hours worked each workweek; d. Total daily or weekly straight-time earnings; e. Total overtime excess compensation for the workweek; f. Total additions to or deductions from wages paid each pay period; g. Total wages paid each pay period; and h. Date of payment and the pay period covered by payment.

113.    Throughout her employment with Defendant from March 28, 2022 to October 28, 2022, Defendant suffered, permitted, and required Plaintiff to regularly perform work tasks outside of normal business hours, including: a. Communicating with Defendant staff through the Microsoft Teams platform; b. Checking and responding to work emails; c. Checking and responding to work voicemails; d. Answering and returning phone calls from drivers, customers, and other Defendant staff; e. Making phone calls to coordinate shipments; f. Sending emails to drivers, customers, and other Defendant staff; g. Discussing issues regarding contracted loads with drivers, shippers, receivers, and other Defendant staff; and h. Entering and updating load information in Defendant's systems.

114. Defendant not only knew of but required Plaintiff to be regularly available outside of normal business hours to perform these tasks. Specifically, Defendant required Plaintiff to be available on her personal phone and personal computer to handle work matters during evenings and weekends.

115. Defendant failed to maintain accurate records of Plaintiff's work hours as required by the FLSA, 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2. This failure to maintain records was willful and designed to avoid paying Plaintiff overtime compensation.

116. Throughout her employment in 2022, Defendant suffered or permitted Plaintiff to regularly work overtime hours in numerous workweeks without receiving overtime compensation. Specifically, Plaintiff worked the following overtime hours in excess of 40 hours per week: Week 21 (2 hours), Week 22 (2 hours), Week 23 (3 hours), Week 24 (4 hours), Week 25 (4 hours), Week 27 (4 hours), Week 28 (5 hours), Week 29 (4 hours), Week 30 (5 hours), Week 31 (4 hours), Week 32 (5 hours), Week 33 (4 hours), Week 34 (4 hours), Week 35 (4 hours), Week 36 (6 hours), Week 37 (6 hours), Week 38 (6 hours), Week 39 (6 hours), Week 40 (6 hours), Week 41 (6 hours), Week 42 (6 hours), and Week 43 (2 hours).

117. Defendant knew or should have known that Plaintiff was working these overtime hours because: a. Defendant required Plaintiff to be available outside normal business hours; b. Defendant received the benefit of Plaintiff's overtime work; c. Defendant's management could observe Plaintiff's communications and work activities outside normal business hours; d. The work performed by Plaintiff was a

24

regular and recurring part of her job duties that was necessary for Defendant's operations.

118. In total, Plaintiff estimates she worked approximately one hundred and two (102) hours of overtime during these workweeks for which she was not compensated at one-and-one-half times her regular rate of pay.

119. Defendant's failure to pay overtime compensation to Plaintiff for hours worked in excess of forty (40) in a workweek violated the FLSA, 29 U.S.C. § 207.

120. Defendant's violation of the FLSA was willful, as evidenced by: a. Defendant's knowledge of, and requirement that, Plaintiff regularly worked overtime hours; b. Defendant's requirement that Plaintiff be available outside normal business hours; c. Defendant's failure to maintain accurate records of Plaintiff's work hours as required by law; d. Defendant's failure to compensate Plaintiff for any overtime hours worked despite knowing of such work.

121. As a direct and proximate result of Defendant's violation of the FLSA, Plaintiff has suffered lost wages in the form of unpaid overtime premium compensation for hours worked in excess of forty (40) during multiple workweeks throughout her employment, and has incurred attorneys' fees and costs in bringing this action.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Award Plaintiff compensatory damages for all unpaid overtime wages, calculated at one and one-half times her regular hourly rate for all hours worked in excess of 40 hours per workweek;

B. Award Plaintiff liquidated damages in an amount equal to her unpaid overtime compensation, pursuant to 29 U.S.C. § 216(b);

C. Award Plaintiff reasonable attorneys' fees and costs incurred in this action;

D. Award Plaintiff pre-judgment and post-judgment interest as provided by law; and

E. Grant such other relief as this Court deems just and proper.

**COUNT VI**
**Violation of the Illinois Minimum Wage Law - Unpaid Overtime**
**Plaintiff v. Defendant**

122. Plaintiff realleges and incorporates by reference paragraphs 1-49(a)-(l) of this Complaint as if fully set forth herein this Paragraph of Count VI of this Complaint.

123. At all times material to this Complaint, Defendant was an "employer" of Plaintiff as defined by the IMWL, 820 ILCS 105/3(c).

124. At all times material to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of the IMWL, 820 ILCS 105/3(d).

125. Under the IMWL, 820 ILCS 105/4a(1), Defendant was required to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

126. During Plaintiff's employment with Defendant, she did not fall under any exemption or exception to the IMWL's overtime pay requirements.

127. Under the IMWL, 820 ILCS 105/8, and its implementing regulations, including but not limited to 56 Ill. Admin. Code §§ 210.400 and 210.700, Defendant was required to maintain accurate records for each employee including: a. Time of day and day of week when workweek begins; b. Regular hourly rate of pay for any workweek; c. Hours worked each workday and total hours worked each workweek; d. Total daily or weekly straight-time earnings; e. Total overtime excess compensation for the workweek; f. Total additions to or deductions from wages paid each pay period; g. Total wages paid each pay period; h. Date of payment and the pay period covered by payment.

128. Defendant failed to maintain accurate records of the hours worked by Plaintiff in violation of 820 ILCS 105/8 and 56 Ill. Admin. Code §§ 210.400 and 210.700.

129. Throughout her employment from March 28, 2022 to October 28, 2022, Defendant suffered, permitted, and required Plaintiff to regularly perform work tasks outside of normal business hours, including: a. Communicating with Defendant staff through the Microsoft Teams platform; b. Checking and responding to work emails; c. Checking and responding to work voicemails; d. Answering and returning phone calls from drivers, customers, and other Defendant staff; e. Making phone calls to coordinate shipments; f. Sending emails to drivers, customers, and other Defendant staff; g. Discussing issues regarding contracted loads with drivers, shippers, receivers, and other Defendant staff; and h. Entering and updating load information in Defendant's systems.

130. Defendant required Plaintiff to be regularly available outside of normal business hours to perform these tasks on her personal phone and personal computer during evenings and weekends.

131. Throughout her employment in 2022, Plaintiff regularly worked overtime hours in numerous workweeks without receiving overtime compensation. Specifically, Plaintiff worked the following overtime hours in excess of 40 hours per week: Week 21 (2 hours), Week 22 (2 hours), Week 23 (3 hours), Week 24 (4 hours), Week 25 (4 hours), Week 27 (4 hours), Week 28 (5 hours), Week 29 (4 hours), Week 30 (5 hours), Week 31 (4 hours), Week 32 (5 hours), Week 33 (4 hours), Week 34 (4 hours), Week 35 (4 hours), Week 36 (6 hours), Week 37 (6 hours), Week 38 (6 hours), Week 39 (6 hours), Week 40 (6 hours), Week 41 (6 hours), Week 42 (6 hours), and Week 43 (2 hours).

132. In total, Plaintiff estimates she worked approximately one hundred and two (102) hours of overtime during these workweeks for which she was not compensated at one-and-one-half times her regular rate of pay.

133. Defendant knew that Plaintiff was working these overtime hours because: a. Defendant required Plaintiff to be available outside normal business hours; b. Defendant received the benefit of Plaintiff's overtime work; c. Defendant's management could observe Plaintiff's communications and work activities outside normal business hours; d. The work performed by Plaintiff was a regular and recurring part of her job duties that was necessary for Defendant's operations.

134. Defendant's failure to pay overtime compensation to Plaintiff for hours worked in excess of forty (40) in a workweek violated the IMWL, 820 ILCS 105/4a(1).

135. As a direct and proximate result of Defendant's violation of the IMWL, Plaintiff has suffered lost wages in the form of unpaid overtime premium compensation for hours worked in excess of forty (40) during multiple workweeks throughout her employment, and has incurred attorneys' fees and costs in bringing this action.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. An award of compensatory damages in the amount of unpaid overtime wages, calculated at one and one-half times Plaintiff's regular hourly rate for all hours worked in excess of 40 hours per workweek;

B. An award of treble damages pursuant to the IMWL, 820 ILCS 105/12(a);

C. An award of 5% per month interest on all unpaid overtime wages for each month following the date such wages were due, pursuant to 820 ILCS 105/12(a);

D. An award of reasonable attorneys' fees and costs incurred in this action pursuant to 820 ILCS 105/12(a);

E. An award of pre-judgment and post-judgment interest as provided by law; and

F. Such other relief as this Court deems just and proper.

**JURY DEMANDED**

Respectfully submitted,

KREITMAN LAW, LLC

By: __/s/ Nicholas Kreitman__

Nicholas Kreitman

Plaintiff's Attorney


Nicholas Kreitman
Kreitman Law, LLC
#6313283
505 N. La Salle Dr., Suite 500
Chicago, IL 60654
(847) 970-0575
njk@kreitmanlaw.com